# No. 24-810

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

VALENTINO S.p.A., an Italian Corporation,

*Plaintiff-Appellee*,

v.

MRINALINI, INC., a Delaware Corporation,

*Defendant-Appellant*.

On Appeal from the United States District Court for the
Southern District of New York, No. 1:23-cv-2319 (Vyskocil, J.)

## BRIEF OF APPELLEE VALENTINO S.P.A.

Jordan F. Bock
GOODWIN PROCTER LLP
100 Northern Ave.
Boston, MA 02210
jbock@goodwinlaw.com
(617) 570-1000

Aaron S. Thompson
GOODWIN PROCTER LLP
520 Broadway, Suite 500
Santa Monica, CA 90401
athompson@goodwinlaw.com
(424) 252-6400

Alexandra D. Valenti
Naomi L. Birbach
Jenevieve N. Nutovits
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
avalenti@goodwinlaw.com
nbirbach@goodwinlaw.com
jnutovits@goodwinlaw.com
(212) 813-8800

*Counsel for Appellee*

September 10, 2024

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiff-Appellee Valentino S.p.A. certifies that MFI Luxury S.r.l. owns 100% of the stock of Valentino S.p.A., with this capital stock divided as follows:

(i) 70% owned by Mayhoola Luxury S.a.r.l., controlled by Mayhoola for Investments S.P.C., and

(ii) 30% owned by Kerin Italia S.r.l., controlled by Kering S.A.

No other publicly-held corporation owns 10% or more of the stock of Valentino S.p.A.

September 10, 2024

*/s/ Alexandra D. Valenti*
Alexandra D. Valenti

*Counsel for Plaintiff-Appellee*

i

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ................................................................................1

COUNTERSTATEMENT OF THE ISSUES.............................................2

COUNTERSTATEMENT OF THE CASE................................................2

SUMMARY OF THE ARGUMENT .....................................................7

STANDARD OF REVIEW ..................................................................9

ARGUMENT ..................................................................................10

I.     The District Court Properly Rejected Mrinalini's Article V(1)(e) Defense. ...............................................................................13

II.    Mrinalini's Remaining Challenges Were All Properly Submitted To Arbitration, And Fail On The Merits Regardless. .........................17

       A. The Agreement delegates questions of arbitrability to the arbitrator. .........................................................................18

       B. The parties entered into a valid agreement to arbitrate.......................22

CONCLUSION ................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson Grp., LLC v. City of Saratoga Springs*,
  805 F.3d 34 (2d Cir. 2015) ................................................................25

*In re Arb. Between Interdigital Commc'ns Corp. & Interdigital Tech. Corp.*,
  528 F. Supp. 2d 340 (S.D.N.Y. 2007) ..............................................15

*Matter of Arb. Between Nuclear Elec. Ins. Ltd.*,
  926 F. Supp. 428 (S.D.N.Y. 1996) ...................................................24

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
  58 F.3d 16 (2d Cir. 1995) .................................................................19

*Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*,
  49 F.4th 802 (2d Cir. 2022) ..........................................9, 11, 12, 18

*Contec Corp. v. Remote Sol. Co.*,
  398 F.3d 205 (2d Cir. 2005) ............................................................20

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*,
  6 F.4th 308 (2d Cir. 2021) ..............................................................20

*Encylopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*,
  403 F.3d 85 (2d Cir. 2005) ....................................................7, 8, 11, 12

*Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*,
  156 F.3d 310 (2d Cir. 1998) ....................................................*passim*

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) ...........................................................................18

*Interdigital Commc'ns, Inc. v. Huawei Investment & Holding Co.*,
  166 F. Supp. 3d 463 (S.D.N.Y. 2016) ..............................................15

*Iraq Telecom Ltd. v. IBL Bank S.A.L.*,
  No. 22-832, 2023 WL 2961739 (2d Cir. Apr. 17, 2023)...................14

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
   412 F.3d 418 (2d Cir. 2005) ...................................................14, 15, 17

*Lee v. BSB Greenwich Mortg. Ltd. P'ship*,
   267 F.3d 172 (2d Cir. 2001) ..................................................................20

*Metro. Life Ins. Co. v. Bucsek*,
   919 F.3d 184 (2d Cir. 2019) ...........................................................18, 19

*MGM Prods. Grp., Inc. v. Aeroflot Russian Airlines*,
   573 F. Supp. 2d 772 (S.D.N.Y. 2003) .................................................15

*Monsanto Co. v. Scruggs*,
   459 F.3d 1328 (Fed. Cir. 2006) ...........................................................15

*PaineWebber Inc. v. Bybyk*,
   81 F.3d 1193 (2d Cir. 1996) ...........................................................22, 23

*Perry Street Software, Inc. v. Jedi Technologies, Inc.*,
   No. 20-cv-04539 (CM), 2020 WL 6064158 (S.D.N.Y. Oct. 14,
   2020) ......................................................................................................23

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010)................................................................................23

*Shaw Grp. Inc. v. Triplefine Int'l Corp.*,
   322 F.3d 115 (2d Cir. 2003) ................................................................20

*Spier v. Calzaturificio Tecnica S.p.A.*,
   663 F. Supp. 871 (S.D.N.Y. 1987) ......................................................16

*Telenor Mobile Commc'ns AS v. Storm LLC*,
   584 F.3d 396 (2d Cir. 2009) ................................................................10

*VRG Linhas Aereas S/A v. MatlinPatterson Global Opportunities
   Partner II L.P.*,
   605 F. App'x 59 (2d Cir. 2015) ...........................................................21

*Wells Fargo Advisors, LLC v. Sappington*,
   884 F.3d 392 (2d Cir. 2018) ................................................................19

**Statutes**

9 U.S.C. § 201 ...................................................................................10

9 U.S.C. § 203 ...................................................................................10

9 U.S.C. § 207 ................................................................................7, 10

**INTRODUCTION**

The only question presented by this appeal is whether the district court properly confirmed an award ("Final Award") issued by the Chamber of Arbitration of Milan (the "CAM") resolving a dispute between Italian luxury fashion house Valentino S.p.A. ("Valentino") and New York textile company Mrinalini, Inc. ("Mrinalini"). In challenging that award, Mrinalini never once discusses the arbitration proceedings or the content of the Final Award, and it barely mentions either the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention" or "Convention") or the seven available defenses to confirmation under that governing law. Instead, seeking to avoid the extensive deference due to the Final Award, Mrinalini raises a series of scattershot arguments challenging the arbitrability of its claims and the validity of the parties' underlying contractual agreement—none of which it attempts to fit into any of the New York Convention's seven defenses. But as the district court properly recognized, the parties' agreement has an unambiguously broad arbitration provision that delegates resolution of "any dispute" to an arbitrator—including, expressly, disputes involving the validity and enforcement of the parties' agreement. In light of this provision, Mrinalini's claims—both its substantive claims and its objections to the parties' agreement—were properly resolved in arbitration, not in litigation.

As the district court recognized, at every turn Mrinalini has raised a series of

1

meritless challenges in an ongoing effort to thwart arbitration's twin goals of efficiently resolving disputes and avoiding expensive litigation. The district court properly put an end to Mrinalini's protracted quest and confirmed the Final Award. This Court should affirm.

## COUNTERSTATEMENT OF THE ISSUES

1.      Whether the district court properly confirmed the arbitrator's Final Award under Article V of the New York Convention.

## COUNTERSTATEMENT OF THE CASE

This appeal arises from a contractual dispute between Valentino, an Italian luxury fashion company, and Mrinalini, a New York-based textile designer and manufacturer. JSA592. On December 22, 2016, the parties signed a contract titled "General Purchasing Conditions" (the "Agreement") by which Mrinalini would supply fashion-related materials to Valentino. JSA177, JSA593. The Agreement requires that any disputes relating to the parties' relationship be resolved via arbitration in Italy. JSA593. In particular, the Agreement states:

> Any dispute that may arise connected to the Agreement as well as associated or connected to its execution, interpretation, enforcement, [or] validity, shall be referred by the more diligent Party to a sole arbitrator appointed by the Milan Chamber of Arbitration, pursuant [to] the Rules of the Milan Chamber of Arbitration.

JSA162.

The parties' relationship deteriorated in 2019, and Mrinalini accused Valentino of misappropriating certain designs. JSA593-594. After negotiations

2

failed to resolve the parties' dispute, Valentino followed the terms of the Agreement and filed a request for arbitration with the CAM on February 21, 2022 (the "Arbitration"). JSA261, JSA594. Specifically, Valentino sought a declaratory judgment that it did not breach the parties' Agreement by either purportedly keeping Mrinalini swatches following the end of the supplier relationship or purportedly reproducing and using swatches independently designed by Mrinalini. JSA264-265. Mrinalini's April 19, 2022 response objected to the arbitrability of the parties' dispute. JSA261, JSA266. Pursuant to CAM rules, the CAM Arbitral Council denied Mrinalini's challenge on June 14, 2022 and appointed an Arbitrator to resolve the dispute. JSA594, JSA261.[1]

In the midst of the proceedings before the CAM, Mrinalini filed an action in the Southern District of New York on March 25, 2022, raising claims of copyright infringement, trade secret misappropriation, unjust enrichment, conversion, breach of contract, and unfair competition. JSA113-JSA154. In broad strokes, Mrinalini alleged that Valentino infringed certain of Mrinalini's copyrighted designs, misappropriated purportedly proprietary stitching techniques, improperly kept a set of swatches it had received from Mrinalini, breached the parties' agreement, and

---

[1] The CAM Rules provide that, "[w]here a party objects to the application of the Rules before the Arbitral Tribunal is constituted the Arbitral Council shall decide on the admissibility of the arbitration." JSA055.

3

otherwise engaged in acts of unfair competition. JSA119-150. Mrinalini also alleged that Valentino was liable for unjust enrichment based on allegations that Valentino employees demanded certain gifts from Mrinalini employees. JSA150-152.

Valentino moved to dismiss pursuant to the parties' arbitration agreement, under the doctrine of *forum non conveniens*, and for failure to state a claim under Rule 12(b)(6). JSA234. In the alternative to its motion to dismiss on arbitration grounds, Valentino sought to compel arbitration and stay the action. *Id.* Mrinalini separately moved to enjoin the Arbitration in favor of the New York proceeding. *Id.* On March 1, 2023, the district court granted Valentino's motion to compel, denied Mrinalini's motion to enjoin the Arbitration, and stayed the New York proceeding pending resolution of the Arbitration. JSA240. The district court explained that the parties' arbitration provision "is very broad in that it encompasses 'any dispute . . . connected to the Agreement,'" and further "expressly commits to arbitration 'any dispute . . . associated or connected to its execution, interpretation, enforcement, [or] validity.'" JSA237 (quoting JSA162). As a result, the court determined that the Agreement "clearly and unmistakably assigned to the arbitrator the question of whether Mrinalini's claims set out an arbitrable dispute," and any disputes regarding the arbitrability of Mrinalini's particular claims were properly

resolved by the arbitrator, and not by the court. *Id.*[2]

In the meantime, the Arbitration proceeded apace. On September 2, 2022, Valentino submitted its Statement of Claim. JSA262. Having learned from Mrinalini's complaint in the Southern District of New York that Mrinalini further contended that Valentino had engaged in copyright infringement, Valentino included an additional request for declaratory relief of non-infringement along with its request for a declaration that it did not breach the parties' Agreement. JSA263. Mrinalini responded by filing a Statement of Defense on November 2, 2022. Rather than address the merits of its claims, Mrinalini's Statement was premised primarily on the same arbitrability arguments that it had raised in the S.D.N.Y. proceeding. JSA262, JSA263-264. Following additional briefing, the Arbitrator held an oral hearing on February 7, 2023, with full participation by both parties. JSA262. At the close of the hearing, the Arbitrator asked whether the parties wanted the opportunity to submit post-hearing briefing; counsel for Mrinalini stated that further briefing was unnecessary, and that it had "said everything [it] wanted to say." JSA518.

On March 8, 2023, the Arbitrator issued an 86-page Final Award. JSA253-

---

[2] Despite the district court's careful analysis, Mrinalini moved for reconsideration of the decision. The district court roundly rejected this motion, explaining that it had "no merit" and "abuse[d]" the court's "scarce judicial resources," and further that Mrinalini's arguments were "misguided." Order Den. Mot. for Recons. at 1-3, No. 1:22-cv-02453 (S.D.N.Y. June 6, 2023), ECF No. 72.

JSA338. The Arbitrator found that all claims regarding the alleged improper use and retention of Mrinalini's designs or swatches, copyright infringement, and trade secret misappropriation were arbitrable, and further that Mrinalini—having premised its defense almost entirely on arbitrability issues—had failed to sustain its burden of proving liability or damages associated with any of those claims.[3] JSA338. The only claim the Arbitrator held not to be arbitrable was Mrinalini's unjust enrichment claim based on allegations that Valentino employees improperly demanded gifts or favors from Mrinalini employees. JSA283-284 (¶ 140). The Final Award also granted Valentino costs incurred in the arbitration proceeding. JSA337.

Mrinalini appealed the Final Award to the Court of Appeals of Milan, and filed an accompanying petition to suspend the Final Award pending the outcome of the appeal. JSA588-591. On August 30, 2023, the Court of Appeals of Milan dismissed Mrinalini's petition, finding that there was "no immediate 'evidence' of the merits of the grounds of nullity of the AWARD, as argued by Mrinalini," and further that there was no "serious and irreparable injury to Mrinalini" requiring a stay of execution of the Award. *Id.* The appeal itself remains pending.

---

[3] Although Valentino filed the Arbitration, the burden of proof on liability remained with Mrinalini on the primary claims for relief given the Arbitration's posture as a declaratory judgment action. JSA293 (¶ 191).

After the Arbitrator issued the Final Award, Valentino commenced the underlying confirmation action pursuant to Section 207 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 207, and the New York Convention. Over Mrinalini's opposition, the district court granted Valentino's Petition and Motion to Confirm and Enforce the Final Arbitration Award on February 26, 2024. The district court rejected Mrinalini's arguments across the board, explaining that it had failed to satisfy any of the enumerated defenses to confirmation set forth in the New York Convention. JSA592-JSA606. In particular, the court concluded (1) that the Final Award did not contain decisions on matters beyond the scope of submission to Arbitration under Article V(1)(c); (2) that the Final Award was binding on the parties and had not been set aside or suspended under Article V(1)(e); and (3) that Mrinalini was able to fully participate and present its case during the Arbitration under Article V(1)(b). *Id.* The court also, now for the third time, addressed and rejected Mrinalini's arguments concerning jurisdiction and the arbitrability of the parties' dispute. JSA599-601. This appeal followed.

## SUMMARY OF THE ARGUMENT

The New York Convention provides an exhaustive list of seven enumerated defenses to confirmation of a foreign arbitral award, and any party opposing enforcement must meet its "burden to prove" the applicability of one or more of these defenses. *Encylopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*,

403 F.3d 85, 90 (2d Cir. 2005). In this appeal, Mrinalini identifies only one defense under the New York Convention—namely, that the district court should have adjourned the confirmation proceeding under Article V(1)(e) in light of the pending appeal in Italy of the Final Award. Opening Br. 19-20. The district court properly rejected this argument and Mrinalini does not seriously contend otherwise. Mrinalini's sole argument on appeal under Article V(1)(e) is that the mere *existence* of a pending appeal is sufficient justification to stay the arbitral award. To the contrary, this Court's precedents make clear that stays of confirmation are disfavored absent a showing that the circumstances of a particular case (*e.g.*, the procedural posture of the foreign proceeding, the level of review applicable to that proceeding, and the balance of hardships to the parties) weigh in favor of adjournment. Mrinalini does not even attempt to make this showing here.

Mrinalini does not cite any other defenses under Article V, but rather argues generally that the district court, rather than the arbitrator, should have resolved Mrinalini's ancillary challenges to the scope and validity of the Agreement. By failing even to identify any defense under Article V, Mrinalini has not met its "burden to prove" the applicability of these defenses. *Encylopaedia Universalis S.A.*, 403 F.3d at 85. Because the party opposing confirmation under Article V "must first identify which defense it is invoking to establish any potential entitlement to that defense," the Court can reject Mrinalini's arguments on this basis alone. *See*

*Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 815-16 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 786 (2023).

But even construing Mrinalini's ancillary arguments as properly the subject of this appeal, they fail on the merits. The Agreement contains a broad arbitration clause that delegates resolution of "any disputes"—expressly including disputes involving the validity and enforcement of the agreement—to the arbitrator. In addition, the rules of the parties' selected arbitral forum, adopted by the parties' in their Agreement, clearly and unmistakably refer questions of arbitrability to the arbitrator. The district court thus properly delegated Mrinalini's various claims regarding the validity and interpretation of the Agreement to the Arbitrator. Mrinalini does not challenge the Arbitrator's conclusion that the parties had a valid agreement to arbitrate and that Mrinalini's disputes were arbitrable; indeed, its brief includes no discussion whatsoever of the Final Award.

## STANDARD OF REVIEW

"An application to confirm a foreign arbitral award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Commodities & Mins. Enter.*, 49 F.4th at 809 (citation and internal quotation marks omitted). As a result, a district court's review of an arbitration award is "very limited" and "extremely deferential" to the arbitrator's findings. *Id.* (citations omitted). This "very limited" review is by design: "Given the strong public policy

in favor of international arbitration, review of arbitral awards under the New York Convention" should "avoid undermining the twin goals of arbitration, namely, settling disputes effectively and avoiding long and expensive litigation." *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 405 (2d Cir. 2009) (citation omitted).

This Court "review[s] a district court's decision to confirm an arbitration award *de novo* to the extent it turns on legal questions," and "review[s] any findings of fact for clear error." *Id.* at 408 (citation omitted). The district court's decision whether "to adjourn enforcement proceedings" where the award is under review in the originating country (*e.g.*, where the award has been appealed) is reviewed for abuse of discretion. *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 316-17 (2d Cir. 1998).

## ARGUMENT

Chapter 2 of the FAA, 9 U.S.C. §§ 201-08, "empowers the federal courts to enforce arbitrations, such as this one, governed by the New York Convention." *Telenor Mobile*, 584 F.3d at 404; *see also* 9 U.S.C. §§ 201, 203. Under the New York Convention, a district court "*shall* confirm [an] award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the" Convention. 9 U.S.C. § 207 (emphasis added). The Convention lists seven grounds for denial of confirmation, including, as relevant here, that the "award has

10

not yet become binding on the parties" (Article V(1)(e)).[4] Those seven grounds are the *only* grounds that can defeat confirmation. *Commodities & Mins. Enter.*, 49 F.4th at 809-10.

The party opposing enforcement of an arbitral award bears the "burden to prove" that one of these seven defenses applies. *Encyclopaedia Universalis S.A.*, 403 F.3d at 90; *see also Europcar*, 156 F.3d at 313 ("The party opposing

---

[4] In full, Article V of the New York Convention states:

1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that: (a) The parties to the agreement … were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that: (a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or (b) The recognition and enforcement of the award would be contrary to the public policy of that country.

enforcement has the burden of proving the existence of one of these enumerated defenses"). "Because the defenses listed under Article V are exhaustive" and there is "a heavy burden to prove such a defense," the opposing party "must first identify which defense it is invoking to establish any potential entitlement to that defense." *Commodities & Mins. Enter.*, 49 F.4th at 815-16. Failure to do so is a "serious lapse" by the opposing party. *Id.*

Mrinalini all but ignores its obligation to identify the defenses it seeks to invoke under Article V. *See id.* Indeed, there is just one reference to Article V: On the final page of its brief, Mrinalini includes a passing "*See also*" cite to Article V(1)(e). Opening Br. 20. Article V(1)(e) thus provides the only permissible basis for challenging the Arbitrator's decision. *See Commodities & Mins. Enter.*, 49 F.4th at 815-16; *Encylopaedia Universalis S.A.*, 403 F.3d at 90. On the merits, the district court properly rejected Mrinalini's argument under this section.

Much of Mrinalini's brief focuses not on Article V and the Final Award, but instead on its challenge to the district court's conclusion that the validity of the Agreement and the arbitrability of the parties' dispute were matters for the arbitrator, and not the court. As this Court has recognized, it is not clear that a district court even must independently undertake this analysis when deciding a motion to confirm. But even assuming these arguments are properly before this Court, they fail on the merits.

## I.    The District Court Properly Rejected Mrinalini's Article V(1)(e) Defense.

Article V(1)(e) provides that a district court may decline to enforce an award that "has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made."  This Court has made clear that the pendency of a foreign proceeding is not itself a reason to delay confirmation.  To the contrary, a "stay of confirmation should not be lightly granted lest it encourage abusive tactics by the party that lost in arbitration."  *Europcar*, 156 F.3d at 317.  When deciding whether to adjourn, district courts consider a set of non-exhaustive factors, including "(1) the general objectives of arbitration"; "(2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved"; "(3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review"; "(4) the characteristics of the foreign proceedings"; "(5) a balance of the possible hardships to each of the parties"; and "(6) any other circumstance that could tend to shift the balance in favor of or against adjournment."  *Id.* at 317.  These factors must be considered with the recognition that adjourning enforcement proceedings to await the outcome of foreign proceedings "impedes the goals of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation."  *Id.*

Applying these principles here, the district court properly rejected Mrinalini's

13

request to adjourn confirmation pending resolution of the appeal in Italy. Opening Br. 19-20. The only purported justification Mrinalini raises in its Opening Brief is that there exists a "pending appeal of the arbitration decision in Italy." *Id.* at 20. If the mere existence of an appeal or other ongoing proceedings were sufficient to justify denying confirmation, a party could delay enforcement of an award simply by filing an appeal. To the contrary, this Court has made clear that a party seeking adjournment must identify factors above and beyond the mere existence of a pending foreign proceeding. *See supra*, p. 13; *see also Iraq Telecom Ltd. v. IBL Bank S.A.L.*, No. 22-832, 2023 WL 2961739, at *1 (2d Cir. Apr. 17, 2023) (affirming district court's decision not to stay enforcement of an award despite a pending annulment action in the foreign jurisdiction).

Mrinalini has the burden of establishing that adjournment is appropriate, but it does not address *any* of the *Europcar* factors in its Opening Brief, and instead merely cites its filing in the district court. Opening Br. 19 ("Mrinalini reported many reasons to adjourn in ECF No. 33, Sections IV. D. and E."). Mrinalini cannot incorporate its prior arguments by reference, and Mrinalini has thus waived any argument that the *Europcar* factors weigh in favor of adjournment. *See JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) ("arguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court"); *see also Monsanto Co. v.*

14

*Scruggs*, 459 F.3d 1328, 1335, 1341 (Fed. Cir. 2006) ("argument by incorporation, such as by referring to [district court briefing], is a violation of Fed. R. App. P. 28(a)," and any such "arguments are therefore deemed waived").[5]

Even reviewing the submission below, Mrinalini's arguments are meritless. Mrinalini suggested that the adjournment would best serve the objectives of arbitration, but "[c]onfirmation, not a stay, advances the general objective of 'expeditious resolution of disputes.'" *MGM Prods. Grp., Inc. v. Aeroflot Russian Airlines*, 573 F. Supp. 2d 772, 778 (S.D.N.Y. 2003) (quoting *Europcar*, 156 F.3d at 317). As for the status of the foreign proceedings, Mrinalini did not dispute that the Italian appellate proceedings are likely to be pending for a lengthy period of time— weighing "overwhelmingly [in] favor [of] enforcement." *See In re Arb. Between Interdigital Commc'ns Corp. & Interdigital Tech. Corp.*, 528 F. Supp. 2d 340, 360-61 (S.D.N.Y. 2007). Mrinalini below cited *Interdigital Communications, Inc. v. Huawei Investment & Holding Co.*, 166 F. Supp. 3d 463, 471 (S.D.N.Y. 2016), but there the district court chose to adjourn enforcement proceedings in part because, unlike here, the hearing in the foreign proceeding was only a few weeks away, with a decision expected just "four to six weeks after the hearing."

Mrinalini likewise did not show that the Final Award will receive greater

---

[5] Nor can Mrinalini rescue this argument by addressing it on reply. *See JP Morgan Chase Bank*, 412 F.3d at 428 (arguments first raised on reply are waived).

scrutiny in Italy. To the contrary, Mrinalini did not meaningfully dispute that Italian law, like U.S. law, authorizes the vacatur of arbitration awards only on limited grounds.[6] The "characteristics of the foreign proceedings" further support Valentino, as it is Mrinalini that is seeking to set aside the award in Italy. *Europcar*, 156 F.3d at 318 (foreign proceedings brought "to set the award aside … tend to weigh in favor of enforcement"). Finally, Mrinalini suggested that there was no "urgent need" for Valentino to confirm the Final Award. But Mrinalini subsequently sought to stay execution of the judgment on appeal without posting a bond because it could not "withstand execution on Valentino's judgment." ECF No. 43 at 4; *see also id.* at 1 (objecting that the judgment "will irreparably damage Mrinalini").[7] Mrinalini's precarious financial position thus underscores the urgency of finalizing the Award. *Europcar*, 156 F.3d at 318 (noting that court should consider insolvency of the parties in determining hardship).[8]

---

[6] Mrinalini cites both *Europcar*, 156 F.3d at 317-18, and *Spier v. Calzaturificio Tecnica S.p.A.*, 663 F. Supp. 871, 875-76 (S.D.N.Y. 1987), on appeal. Opening Br. 20. Among other differences, these decisions both involved a proceeding referred to as an "arbitrato irrituale," an informal proceeding that is subject to more deferential review on appeal in Italy. *Spier*, 663 F. Supp. at 873-74. By contrast, the underlying arbitration here involved an "arbitrato rituale," which results in "an award challengeable in the Italian courts only on the most limited grounds." *Id.* at 874.

[7] Unless otherwise specified, ECF citations refer to the district court docket in the underlying action, Case No. 1:23-cv-02319-MKV (S.D.N.Y.).

[8] Under Article VI of the Convention, a district court may order the party requesting adjournment "to give suitable security," thereby protecting the interests of the party

16

In sum, Mrinalini's only attempt to satisfy its burden under Article V consists of barely a page of undeveloped argument at the tail end of its brief.  That alone is reason to deny its request.  *See JP Morgan Chase Bank*, 412 F.3d at 428.  Even reaching the merits, the district court's decision to proceed with confirming the Final Award was correct—and in no way an abuse of discretion.

## II.  Mrinalini's Remaining Challenges Were All Properly Submitted To Arbitration, And Fail On The Merits Regardless.

Mrinalini's remaining arguments do not challenge any aspect of the Final Award.  Indeed, Mrinalini barely cites (let alone discusses) the Final Award in its Opening Brief.  Mrinalini instead raises a set of scattered objections to the district court's conclusion that challenges to the validity of the Agreement and the arbitrability of the parties' dispute were properly decided by the arbitrator, and not the court.

It is not clear these arguments are properly before this Court on appeal.  As this Court has recognized, it is an open question whether a district "court may (or must) review the validity of an arbitration agreement *de novo* on a motion to confirm."  *Commodities & Mins. Enter.*, 49 F.4th at 817 n.12.  This argument would typically arise "at the threshold stage of arbitration, on motions to compel," *id.*—

---

seeking enforcement.  Given Mrinalini's financial position here—and its effort to waive the bond requirement for staying execution of the judgment pending appeal—this was not a viable option for the district court in this case.

which here occurred in the initial S.D.N.Y. action. *See supra*, p. 4. The same is true for arbitrability, which is likewise a threshold determination that arises on a motion to compel.

Even assuming these arguments are properly before this Court, the district court correctly determined that they are matters for the arbitrator—and, again, Mrinalini has not in any way challenged the arbitrator's decision.[9] Mrinalini's arguments also fail on the merits regardless. This Court should affirm.

## A. The Agreement delegates questions of arbitrability to the arbitrator.

"The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (brackets, citation, and internal quotation marks omitted); *see also Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019). Here, the Agreement provides that clear and unmistakable evidence. JSA599-601.

The Agreement states: "Any dispute that may arise connected to the Agreement as well as associated or connected to its execution, interpretation,

---

[9] Mrinalini might have challenged the *arbitrator's* decision on validity and arbitrability, *see supra*, p. 6, by raising a challenge to the Final Award itself under Articles V(1)(a) and V(1)(c). It did not do so, focusing instead on the district court's resolution of these issues.

enforcement, [or] validity, shall be referred by the more diligent Party to a sole arbitrator appointed by the Milan Chamber of Arbitration, pursuant [to] the Rules of the Milan Chamber of Arbitration." JSA162. Broad clauses that refer "any dispute" to arbitration are understood to defer questions of arbitrability to the arbitrator. *See, e.g.*, *Metro. Life Ins. Co.*, 919 F.3d at 191 ("Broad language expressing an intention to arbitrate all aspects of all disputes supports the inference of an intention to arbitrate arbitrability …"). Thus, a clause requiring arbitration of "any dispute … concerning matters related to or arising from your employment" "demonstrate[d] the parties' clear and unmistakable intent to arbitrate all questions of arbitrability." *Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 394, 396 (2d Cir. 2018). So too did a clause "submitting to arbitration '[a]ny claim or controversy arising out of relating to th[e] agreement.'" *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (describing this wording as the "paradigm of a broad clause"). Applying these principles here, the district court properly determined that the parties' use of "any dispute" demonstrated that they intended to delegate arbitrability to the arbitrator. JSA600.

In addition, the Agreement states that the arbitration shall be conducted "pursuant [to] the Rules of the Milan Chamber of Arbitration." JSA162. Those rules state: "Any objection to the existence, the validity or the effectiveness of the arbitration agreement or lack of jurisdiction of the Arbitral Tribunal shall be raised

in the first brief or at the first hearing …" JSA058.  Thus, arbitrability is a question solely for the CAM, and not the court.  *See DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 318-19 (2d Cir. 2021) (incorporation of rules delegating arbitrability to the arbitrator coupled with clause providing for arbitration of "all disputes" constitutes clear and unmistakable evidence of intent to arbitrate arbitrability); *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (same); *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 118, 120-22 (2d Cir. 2003) (same).

Mrinalini argues that it is "highly implausible" that it would have agreed to arbitrate its intellectual property claims.  Opening Br. 16.  But it is a general principle of contract interpretation that where, as here, "the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms," without resort to any extrinsic arguments about what the parties might have intended.  *Lee v. BSB Greenwich Mortg. Ltd. P'ship*, 267 F.3d 172, 178 (2d Cir. 2001) (citation omitted).  Mrinalini has also provided zero extrinsic evidence to support its conjectures regarding its understanding of the contract.

To the contrary, Mrinalini concedes that it "*would have* agreed to arbitrate" if Valentino had issued a purchase order after the parties signed the Agreement.  Opening Br. 16; *see also id.*, 15 ("Mrinalini might have agreed to such arbitration if Valentino had ever completed the Agreement by providing valuable purchase

20

orders"). In other words, Mrinalini argues that it did not agree to arbitrate arbitrability because Valentino allegedly did not issue any purchase orders to Mrinalini *after* the parties had already signed the Agreement. That makes little sense: the parties agreed to the arbitration provision in the Agreement before Valentino was in a position to issue any purchase orders. While Mrinalini acknowledged that Valentino did later issue purchase orders, *see infra*, p. 24, what Valentino did after the parties' signed the Agreement has no bearing on the meaning of the arbitration provision. Mrinalini's repeated references to the alleged lack of purchase orders are therefore irrelevant.

Mrinalini relies (at 18-19) on *VRG Linhas Aereas S/A v. MatlinPatterson Global Opportunities Partner II L.P.*, 605 F. App'x 59 (2d Cir. 2015), to support its arbitrability argument, but that decision has no bearing on this issue. In *VRG*, this Court affirmed the district court's finding that the opposing party had never signed the arbitration agreement. 605 F. App'x at 61. The Court explained that the arbitration agreement was contained in a separate agreement that did not incorporate the arbitration agreement in the contract the parties had actually signed. *Id.* Mrinalini argues that *VRG* shows that Mrinalini "had not clearly and unmistakably agreed to submit arbitrability to the arbitrator." Opening Br. 18. To the contrary, the decision merely confirms the "well-established rule that 'a reference by the contracting parties to an extraneous writing for a particular purpose makes it part of

21

their agreement only for the purpose specified.'" *VRG*, 605 F. App'x at 61 (citation omitted). That conclusion has nothing to do with the facts of this case (which do not involve an extraneous writing), nor does it have any bearing on whether the district court here properly interpreted the arbitration provision in the Agreement.

### B. The parties entered into a valid agreement to arbitrate.

Mrinalini also raises a laundry list of redundant, undeveloped arguments challenging the validity of the Agreement itself. In short order, Mrinalini argues that the parties never formed the Agreement because Valentino never issued any purchase orders; that the Agreement is unenforceable for lack of consideration or mutuality; and that there is no evidence that Valentino signed the Agreement. Opening Br. 9-12. These arguments fail twice over.

First, Mrinalini's arguments all involve the enforceability or validity of the Agreement, but the parties expressly delegated disputes involving "execution, interpretation, enforcement, [or] validity" to the arbitrator. JSA162. "Th[is] wording is inclusive, categorical, unconditional and unlimited." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996) (interpreting clause stating that "[a]ny and all controversies … concerning any account, transaction, dispute or the construction, performance, of breach of this or any other agreement … shall be

determined by arbitration").[10]  As this Court has already recognized, where an agreement delegates questions of "validity, execution or resolution" to the arbitrator, any disputes over the validity of the underlying contract must "be determined exclusively by the arbitrators." *Europcar*, 156 F.3d at 315.

Notably, "a party's challenge to … the contract as a whole[] does not prevent a court from enforcing a specific agreement to arbitrate." *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 66, 69-70 (2010) (construing agreement that granted the arbitrators "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation" of the contract).  In other words, a party cannot escape an agreement to arbitrate by challenging the validity of the agreement in its entirety.  *See id.*; *see also Europcar*, 156 F.3d at 315 (issue concerning validity of "the underlying contract that is the subject of the arbitrated dispute" is "a matter

---

[10] Mrinalini suggests (Opening Br. 15) that *PaineWebber* is distinguishable because the case involved a valid arbitration agreement.  But *PaineWebber* is relevant here because the Second Circuit recognized the breadth of an agreement delegating "any and all controversies" to the arbitrator.  81 F.3d at 1199.  Mrinalini raises no argument regarding the language of the arbitration agreement, or otherwise explains why the broad wording of the arbitration provision here does not delegate questions of validity to the arbitrator.  Mrinalini's objection to the district court's reliance on *Perry Street Software, Inc. v. Jedi Technologies, Inc.*, No. 20-cv-04539 (CM), 2020 WL 6064158, at *8 (S.D.N.Y. Oct. 14, 2020), is similarly misplaced.  *Perry* confirms the well-established rule that a dispute regarding the scope of an arbitration agreement "necessarily requires an interpretation of the arbitration agreement." *Id.* at *8 n.2.  Mrinalini argued (Opening Br. 15) that the court in *Perry* declined to order arbitration, but the court's decision rested on the question, irrelevant here, of when a party's agent can bind it to an arbitration agreement. *Id.* at *5.

23

to be determined exclusively by the arbitrators"); *Matter of Arb. Between Nuclear Elec. Ins. Ltd.*, 926 F. Supp. 428, 434-35 (S.D.N.Y. 1996) (collecting cases "holding that it is for the arbitrator and not the court to pass on a claim that a contract containing an arbitration clause is unenforceable," including for "lack of mutuality of obligation") (citation omitted).

On the merits, Mrinalini's arguments are wrong on both the facts and the law. First, the arbitrator properly rejected Mrinalini's argument that there was no valid agreement to arbitrate absent a subsequent purchase order. As the arbitrator explained, by signing the Agreement, "the Parties entered into a long-term supply agreement and, thereby, created obligations between the Parties which went beyond the obligations arising from a single purchase order[]." JSA282 (¶ 133). "The term 'Agreement' as used in the [General Purchasing Conditions] … must be interpreted in such a way that it refers to this long-term supply relationship." *Id.* Mrinalini does not even cite this finding from the Final Award, let alone explain why it is incorrect. Moreover, while Mrinalini maintains that Valentino never sent it any purchase orders, Mrinalini in fact acknowledged below that it continued to do business with Valentino after entering into the Agreement. *See* Br. in Opp'n to Mot. to Dismiss at 10, No. 1:22-cv-02453 (S.D.N.Y. Sept. 23, 2022), ECF No. 50 (discussing "Valentino's request" that Mrinalini use a particular stitching technique); *see also* JSA115 (¶ 22) (alleging in the Amended Complaint that "Valentino S.p.A. issued

purchase orders to Mrinalini Inc. which, again, is located in New York City").

Next, Mrinalini waived any argument regarding consideration or mutuality by failing to raise it either before the arbitrator or before the district court. *See* Opening Br. 11-12; *Europcar*, 156 F.3d at 315 (arguments that party fails to raise before the arbitrator are waived in enforcement proceedings); *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 50 (2d Cir. 2015) ("It is well settled that arguments not presented to the district court are considered waived and generally will not be considered for the first time on appeal"). Mrinalini is also wrong. As just noted, Mrinalini has never provided any evidence—to the district court, to the Arbitrator, or to this Court—that the signed agreement containing the parties' arbitration clause was anything other than a valid business instrument entered into by willing parties. Indeed, Mrinalini itself *attached* the agreement to its complaint in the initial S.D.N.Y. action, averring that the document constituted a "written contract manufacturing agreement wherein Valentino would provide Mrinalini with specific designs and specifications, and Mrinalini would supply Valentino with clothing and related fashion items in quantity according to those designs and specifications for Valentino to sell into worldwide markets." JSA118 (¶ 37). Having made this allegation, Mrinalini cannot now complain that, in fact, that agreement is not actually an agreement at all.

Finally, the Arbitrator properly rejected Mrinalini's claim that there is no

binding written Agreement.  As the Arbitrator explained, by submitting and relying on the Agreement in the Arbitration, Mrinalini forfeited any argument based on whether the Agreement was validly signed.  JSA274 (¶¶ 92-93).  Mrinalini's brief does not mention, let alone challenge, the Arbitrator's conclusion on this point.

## CONCLUSION

Valentino respectfully requests that this Court affirm the district court's order confirming the Final Award.

Respectfully submitted,

*/s/  Alexandra D. Valenti*

Jordan F. Bock
GOODWIN PROCTER LLP
100 Northern Ave.
Boston, MA  02210
jbock@goodwinlaw.com
(617) 570-1000

Aaron S. Thompson
GOODWIN PROCTER LLP
520 Broadway, Suite 500
Santa Monica, CA 90401
athompson@goodwinlaw.com
(424) 252-6400

Alexandra D. Valenti
Naomi L. Birbach
Jenevieve N. Nutovits
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
avalenti@goodwinlaw.com
nbirbach@goodwinlaw.com
jnutovits@goodwinlaw.com
(212) 813-8800

Dated:  September 10, 2024

*Counsel for Plaintiff-Appellee*

26

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 35(b)(2)(A), as it contains 6,291 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface, 14-point Times New Roman font, using Microsoft Word 2010.

September 10, 2024

*/s/ Alexandra D. Valenti*
Alexandra D. Valenti

*Counsel for Plaintiff-Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing brief with the Clerk of the United States Court of Appeals for the Second Circuit via the CM/ECF system this 10th day of September, 2024. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

September 10, 2024                    /s/ Alexandra D. Valenti
                                      Alexandra D. Valenti

                                      *Counsel for Plaintiff-Appellee*